[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 12-15938

D.C. Docket No. 1:11-cv-04426-MHS

MONIQUE WILKERSON,

　　　　　　　　　　　　　　　　　　　　　　　Plaintiff - Appellee,

versus

THEDIOUS SEYMOUR,
Dekalb County Police Officer,
O.B. PARKER,
Dekalb County Police Sergeant,

　　　　　　　　　　　　　　　　　　　　　　　Defendants - Appellants.

Appeal from the United States District Court
for the Northern District of Georgia

(October 30, 2013)

Before PRYOR and BLACK, Circuit Judges, and RESTANI, Judge.[*]

RESTANI, Judge:

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

Appellants Dekalb County police officers Thedious Seymour ("Officer Seymour") and O.B. Parker ("Sergeant Parker") were sued by Appellee Monique Wilkerson ("Wilkerson") for violations of 42 U.S.C. § 1983, following Wilkerson's allegedly false arrest. Because the facts viewed in the light most favorable to Wilkerson show that Officer Seymour lacked arguable probable cause to arrest Wilkerson, we affirm the district court's denial of qualified immunity. The district court erred, however, in denying qualified immunity to Sergeant Parker, who was not present during the alleged false arrest, and we reverse as to him.

## I.  BACKGROUND

Wilkerson visited a sports bar on the night of September 9, 2010, to watch the first football game of the season.[1] She legally parked her car in the bar's parking lot. During the game, Wilkerson heard her car's description and then tag number announced by the DJ, informing her that her car was blocking someone in the parking lot. After multiple announcements, Wilkerson paid her tab, gave up her seat, and went outside, where she encountered Officer Seymour, who was working security off-duty but in full uniform. Officer Seymour told Wilkerson that she was just in time to prevent her car from being towed. Wilkerson

---

[1] The facts are drawn largely from the statements of undisputed material facts and presented in the light most favorable to Wilkerson, as we must do at the summary judgment stage. See Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005).

acknowledged that the car was hers, and Officer Seymour told her to move it because it would be easier than moving multiple illegally parked cars. Wilkerson objected, saying, "But that's — that's not right." Wilkerson also complained that Officer Seymour had interrupted her dinner and her game, using the words "hell" and "damn" at least once. Officer Seymour believed that Wilkerson was upset because she thought her car was going to be towed. Wilkerson denies that she spoke to anyone other than Officer Seymour prior to her arrest, or that there were other people around them during her interaction with Officer Seymour. After Officer Seymour asked Wilkerson a second time to move her car, Wilkerson responded in a louder than conversational tone that she wanted Officer Seymour's name and badge number. At that point, Officer Seymour placed Wilkerson under arrest.

Sergeant Parker, Officer Seymour's supervisor, arrived at the scene approximately three minutes after the arrest, in response to Wilkerson's complaint. Wilkerson was already in the back of a patrol car at the time, which had been called to transport her to jail. Sergeant Parker spoke with Officer Seymour about the incident, and Officer Seymour told him that Wilkerson had accused him of wanting to tow her car, had yelled and cursed, and had used profanity because she did not want to move her legally parked car. Officer Seymour also told Sergeant

3

Parker that he had warned Wilkerson that she was being too loud and that he would arrest her if she continued speaking loudly and cursing. Officer Seymour explained that he arrested Wilkerson for disorderly conduct because she used profanity and was loud and boisterous. Sergeant Parker also spoke with Wilkerson for about one minute, and she told him that she had no criminal record. Following Wilkerson's arrest, her car was impounded, and Wilkerson spent the evening in jail before posting bond. The charges were not acted upon after she completed a diversionary program.

Wilkerson sued Officer Seymour and Sergeant Parker for violations of § 1983 in connection with her allegedly false arrest. Both officers moved for summary judgment on grounds of qualified immunity. The district court denied the motion, finding that Officer Seymour lacked even arguable probable cause to believe Wilkerson had violated the Dekalb County disorderly conduct ordinance and that Sergeant Parker had an opportunity to intervene in the arrest but failed to do so, even though he should have known there was no basis for the arrest. Both officers filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction in this § 1983 action pursuant to 28 U.S.C. § 1331. This court has jurisdiction over the interlocutory appeal of the denial of

qualified immunity as a collateral order under 28 U.S.C. § 1291, pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). The court reviews a denial of qualified immunity de novo. See Maggio v. Sipple, 211 F.3d 1346, 1350 (11th Cir. 2000).

### III.  DISCUSSION

"Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (internal quotation marks and brackets omitted). To avoid summary judgment on qualified immunity grounds, the plaintiff's allegations, supported by admissible evidence, must demonstrate both (1) a constitutional violation and (2) that the violation was clearly established. See id.

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment." Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998). "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." Id. (quoting

5

Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990)).  Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted).

Code of Dekalb County § 16-58, the only provision of law that the officers claim Wilkerson violated, states:

> (a) It shall be unlawful for any person to act in a loud and boisterous, reckless, unruly or violent manner for the purpose of insulting, degrading, or inciting another or a group of individuals in a public place.
> (b) It is not the intent of this section to restrict any individual's right to free speech.[2]

A. Officer Seymour

Wilkerson admits that her conduct violated the first and third prongs of the ordinance: she spoke in a loud voice, and the incident with Officer Seymour occurred in a public place (the parking lot of a sports bar).  Wilkerson argues, however, that Officer Seymour lacked even arguable probable cause to believe that Wilkerson violated prong two by acting for the purpose of insulting, degrading, or inciting another or a group of individuals.  Officer Seymour contends that police

---

[2] The constitutionality of the ordinance is not at issue here.

officers are not lawyers and therefore should not be required to know the elements of particular laws. As a result, they need not have probable cause to believe that each element of the crime has been satisfied. Instead, Officer Seymour contends that a violation of two out of three prongs of an ordinance is close enough.

"Showing arguable probable cause does not . . . require proving every element of a crime." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). Obviously, probable cause and arguable probable cause may differ, but it is tautological that a constitutional arrest must be based on a reasonable belief that a crime has occurred, rather than simply unwanted conduct. See id. ("Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern."). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).

Although qualified immunity protects officers who are reasonably mistaken that a crime has been committed, it does not insulate officers from liability for arrests where it is clear that the conduct in question does not rise to the level of a crime, under the facts known at the time. See Brown, 608 F.3d at 735–36

(analyzing the elements of the statute under which the arrestee was charged). To hold otherwise would eviscerate the concept of probable cause and would permit officers to arrest disagreeable individuals who may be exercising their constitutionally protected rights to free speech, albeit in a loud manner. Officers need not have actual probable cause to make an arrest, and an arrest may be for a different crime from the one for which probable cause actually exists, see <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1089 & n.6 (11th Cir. 2003), but arguable probable cause to arrest for <u>some</u> offense must exist in order for officers to assert qualified immunity from suit.

In his brief on appeal, Officer Seymour does not argue directly that prong two was met. Even if he had, Officer Seymour admitted in his deposition that Wilkerson did not use any language that was insulting or degrading. Additionally, the only alleged profanity were the words "hell" and "damn," neither of which were directed specifically at Officer Seymour. This at least created a question of material fact as to whether a reasonable officer could have believed that Wilkerson used insulting or degrading language. The final basis for a violation of prong two, the incitement of others, remains in dispute. Officer Seymour acknowledges that the presence of a crowd was not mentioned in his police report, and Wilkerson continues to contest that others were present. Accordingly, qualified immunity is

not warranted at the summary judgment phase, as under Wilkerson's alleged facts, supported by admissible evidence, Officer Seymour's arrest of Wilkerson was without arguable probable cause and therefore unconstitutional.

### B. Sergeant Parker

Although Officer Seymour is not entitled to qualified immunity, the same analysis does not govern the question of qualified immunity for Sergeant Parker. Wilkerson argues that Sergeant Parker, who was not present at the time of the arrest, had a duty to intervene and halt her transportation to the jail upon his cursory investigation of the situation. Sergeant Parker claims first that there is no clearly established duty to intervene in a false arrest action, and alternatively, even if such a duty exists, he did not have sufficient information to put him on notice that the arrest by Officer Seymour was unconstitutional.

In Jones v. Cannon, we held that where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest. 174 F.3d 1271, 1283–84 (11th Cir. 1999). We then found that the non-arresting officer could have been sufficiently involved as a participant where he participated in an interview resulting in an allegedly fabricated confession, took notes from which the police report was prepared, and

9

transported the detainee to the jail.  Id. at 1284.  We then held with respect to a different aspect of the claim of a constitutional violation that the same non-arresting officer could not be liable under § 1983 for the arresting officer's allegedly fabricated affidavit used at a later probable cause proceeding.  Id. at 1284–86.

Jones acknowledged a long line of precedent in excessive force cases in which we have recognized a duty to intervene.  See, e.g., Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[I]t is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." (internal quotation marks omitted)).  Thus, we observed in Jones as to the second charge that "[w]hile officers have been subject to liability for failing to intervene when another officer uses excessive force, there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene and is therefore liable under the circumstances presented here."  174 F.3d at 1286 (citation omitted).

Jones did not preclude all failure to intervene claims against a present, but non-arresting, officer in false arrest cases.  Although not made explicit in Jones, we based our different holdings as to the non-arresting officer on both the degree of

10

participation in the arrest and the amount of information available to the non-arresting officer, because a non-arresting officer does not have a duty to investigate the basis of another officer's arrest. See id. 174 F.3d at 1284–86. Additionally, with respect to the second aspect of the claim, we rejected the argument that one officer "is somehow charged with presuming that [the arresting officer] must have put the alleged false confession in the arrest affidavit" or that he "was required to undertake an investigation of the arrest affidavit to determine what [the arresting officer] was doing and what [he] put in the arrest affidavit to continue Jones's detention." Id. at 1286. What is made explicit in Jones is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way.

We need not fully delineate the scope of such a duty here, however, because assuming that Sergeant Parker sufficiently participated in Wilkerson's arrest,[3] Sergeant Parker still lacked the requisite information to put him on notice that an unlawful arrest was occurring or had occurred. Here, Sergeant Parker arrived at the scene after Wilkerson was already under arrest and placed in a transport car. He spoke to Officer Seymour for only a few minutes, during which time he was

---

[3] Sergeant Parker was not present to facilitate the arrest of Wilkerson, which had already occurred, but rather to address a complaint against Officer Seymour raised by Wilkerson. It is unclear what role, if any, he played in effectuating or authorizing Wilkerson's continued detention.

11

told that Wilkerson had been loud in a public place and was using profanity. Sergeant Parker then spoke with Wilkerson for less than one minute. Wilkerson does not claim that she told Sergeant Parker her account of the arrest or that she challenged the basis of her false arrest. Rather, she told him of her clean record and implored him to run a criminal history check, which he declined to do. Putting to the side the question of whether anything Wilkerson might have said after the fact could have placed Sergeant Parker on sufficient notice of the unconstitutionality of her arrest, she alleges no such statement here. Sergeant Parker was entitled to rely on the account of the arrest provided by Officer Seymour and fill in any gaps in the account with reasonable inferences premised on Officer Seymour acting in a constitutional manner and in good faith.

These facts are therefore substantially different from those in Jones where the non-arresting officer participated in the transportation, arrest, and report, while fully aware, based on his personal observations, that the basis for the arrest was fabricated. See Jones, 174 F.3d at 1283–84. As Sergeant Parker was permitted to rely upon the account of Officer Seymour, which did not raise any obvious concerns as to the existence of probable cause, he is entitled to qualified immunity from Wilkerson's false arrest claim. There is no constitutional requirement for a supervising officer to complete a full on-scene investigation of the basis for an

12

arrest for conduct he did not observe.  Accordingly, the district court's denial of his motion for summary judgment was in error.

## IV.   CONCLUSION

Because the facts drawn in the light most favorable to Wilkerson show that Officer Seymour lacked even arguable probable cause to detain Wilkerson for a violation of any crime, the district court correctly held that he was not entitled to qualified immunity.  Sergeant Parker, however, was not present at the time of the arrest and was not an active participant.  Because he had no duty to investigate further the circumstances of the arrest and was entitled to rely upon the account of Officer Seymour, he is entitled to qualified immunity from Wilkerson's § 1983 claim.

AFFIRMED IN PART; REVERSED IN PART.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 30, 2013

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 12-15938-DD
Case Style: Monique Wilkerson v. Thedious Seymour, et al
District Court Docket No: 1:11-cv-04426-MHS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Richardson, DD at (404) 335-6176.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs